## NORTH PLATTE MILLING & ELEVATOR CO. ET AL. v. PRICE ET AL.

Statute of Frauds—Parol Evidence—Ante Nuptial Contract—Conveyance in Execution of—Fraud—Creditors—Joint Motion for New Trial.

1. To satisfy the statute of frauds, it is not necessary that an agreement made in consideration of marriage shall itself be in writing, but it is sufficient if some note or memorandum thereof be in writing.

2. No particular form of words is necessary to constitute a promise or agreement, or a note or memorandum thereof, nor is it material whether the note or memorandum is made before or after the conclusion of the negotiations, if it is a correct statement of the resulting agreement.

3. The following language contained in a letter to a mother asking her consent to the writer's marriage with her daugh-

ter: "I have a nice house and lots, which I intend to deed over to May when we are married," being treated by all the parties in interest as words of contract, and acted on as such, the daughter's attention being called to the letter, held to constitute a sufficient memorandum of a contract to convey property in consideration of marriage, the proposition being accepted.

4. Such agreement is a valid ante-nuptial contract and a conveyance of the property to the wife a few months after the marriage upheld as made upon a good and valuable consideration.

5. In an action brought after conveyance to the wife by creditors to subject the property to the payment of judgments against the husband, parol evidence is admissible to show an acceptance of the proposition contained in the letter, that the daughter was a minor at the time the contract for her marriage was made, that her father was dead, that the recipient of the letter was her mother, and participated in the negotiations leading to the contract and concurred in and approved of them.

6. It is competent to show by parol testimony the attendant circumstances, in order to inform the court of the position and condition of the contracting parties.

7. A creditor who became such subsequent to the conveyance cannot complain of a delay of about six months after the marriage before the execution of the deeds.

8. The delay not being the result of actual fraud, but caused by the mere neglect of the wife in requiring the necessary forms to be observed in receiving the title from her husband, believing the property to be already vested in her, the husband being solvent at the time of the marriage, but insolvent when the deeds were executed, and the property being a homestead about one-half the value of which would be exempt, it is doubtful if the finding of the trial court that the deeds were valid as to prior creditors should be disturbed.

9. The only motion for new trial being the joint motion of the prior and subsequent creditor, and the equities of the wife being superior to those of the latter, the motion was properly overruled, whatever might have been the law as to the prior creditor on a separate motion.

10. A conveyance of the homestead, to the extent of the statutory exemption, by a husband to his wife, will not be held fraudulent as to creditors of the husband.

[Decided August 2, 1893.]

Error to District Court of Albany County. Hon. M. C. Saufley, Judge.

The North Platte Milling & Elevator Co., a corporation, and the Wyoming National Bank instituted certain actions in the district court of Albany County attacking as fraudulent and void a conveyance of real estate from Barnard J. Price to his wife, May E. Price, through the intervention of a third party, Jesse Converse, each of whom was made a party defendant. The plaintiffs were judgment creditors of Barnard J. Price. The actions were consolidated and finally heard and determined as one action upon pleadings, wherein both creditors were joined as plaintiffs. The date of the commencement of the original actions does not appear, but the joint petition was filed August 29, 1889. Judgment for defendants was rendered May 22, 1890, the case being tried to the court. Executions had been issued upon the respective judgments of plaintiffs and returned nulla bona; and it was sought to subject the property which had been conveyed to the wife to the payment of the judgments. It was admitted there was no pecuniary consideration for the deeds, although they recited a consideration of $3,500, but it was claimed by defendants that they had been executed in fulfillment of an ante-nuptial contract, to establish which two letters were produced, one each to mother and daughter; the letter to the mother appears in full in the opinion, the one to the daughter, who became the wife of the writer Bernard J. Price, contained these words: "As it is so near our wedding day I may as well tell you what I intend giving you for a wedding present, it shall be my house and lots as well as the ponies of which latter you seem to be so fond. I mentioned this to mamma some time ago and asked her not to say anything to you about it, but I could not keep it any longer to myself and had to tell you." The mother did communicate to the daughter, so it was testified, the contents of the letter received by her.

Mrs. Price testified that she had not finally consented to the marriage, until her mother's consent was obtained. Mrs. Gavitt, the mother, was allowed to testify over objection that after she received the letter from Price she told him that when her daughter married she wanted her better provided for than she could do herself, that she wanted her to have a home of her own, and that Mr. Price then told her that he was prosperous in business, that he had a home, and would deed it to her daughter when they were married. She further testified that before the marriage she informed her daughter that she had given her consent to the marriage on condition that the house would be deeded to her. Her testimony as to the respective conversations was corroborated by Bernard J. Price and his wife. The marriage occurred June 18, 1888. It seems that a portion of the vacant lots were subsequently sold by Price to another party. The conveyance to the wife was not executed until December 14, 1888, at which time the mother learning of such neglect, and being very sick, requested that it be done without further delay. The Wyoming National Bank was a creditor of the husband and grantor before that date. The other plaintiff became a creditor subsequent thereto. Such other facts as may be material are set forth in the opinion.

*Nellis E. Corthell* and *Brown & Arnold,* for plaintiffs in error.

The first question presented involves the existence and validity of the alleged ante-nuptial contract; and this resolves itself into two propositions: First, did B. J. Price enter into a contract with Mary E. Gavitt, his present wife, whereby he promised to convey to her the property in question in consideration of her promise then made that she would marry him? The letters from Price to the mother and daughter, even when supplemented with the oral conversations improperly admitted in evidence, are wholly insufficient to establish a valid contract made in consideration of marriage. The expressions do not reach the dignity of a promise. The fact that he requests the mother not to mention his intention

to the daughter shows that he did not intend it as a promise. The letter written to the daughter was after the engagement had taken place, and also proves conclusively that they entered into that relation uninfluenced by any agreement about the property. Mrs. Gavitt's consent to the marriage was unnecessary as the marriage occurred after the daughter was of age. The act of Price in selling part of the property in February, 1888, is inconsistent with the theory of an antenuptial contract. After the marriage he retained the legal title, engaged in hazardous business ventures, contracted the debts which he owes one of the plaintiffs and reaped the benefit which the ownership of property gives to the borrower of funds. The deeds reciting a consideration of $3,500 disclosed a different kind of consideration than that set up in the answer. Second, there was no competent evidence to establish a valid ante-nuptial contract under the statute of frauds. (Rev. Stat., Sec. 1249; 3 Parsons on Cont., Sec. 30; Reed Stat. Frauds, Sec. 398, et seq.; Banks v. Harris Mnfg. Co., 20 Fed., 667; Whick v. Corlies, 46 N. Y., 467; Oakman v. Rogers, 120 Mass., 214; Brown St. Frauds, Sec. 371, et seq.; Shoulers Husb. & W., Sec. 353; Randall v. Morgan, 12 Vas., 67; Usher v. Flood, 17 S. W., 132; White v. Bigelow, 28 N. E., 904.) An intention is not a promise. There must have been a written memorandum showing a promise to his intended wife and no other, in consideration of the marriage. The letter to May E. Gavitt was incompetent. It clearly shows, however, that there had been no promise. (Reed v. Livingston, 3 Johns, Ch. 481; Borst v. Corey, 16 Barb., 136; Wait on Fraud. Conv., Sec. 311.) Words of gift are not sufficient. A gift to take effect at a future time is void. (Grangiac v. Arden, 10 Johns, 293; 1 Pars. Cont., Sec. 234.) Parol evidence is inadmissible to establish the contract. The admission of the conversations between the parties violated this principle. (2 Kents Com., 511; Abeel v. Radcliff, 3 Johns, Ch. 297; 3 Pars. Cont., Sec. 13; Salmon Falls M. Co. v. Goddard, 14 How., 446; Waine v. Warlters, 5 East, 10; Brown St. Frauds, Sec. 371, et seq.; Lee v. Hills, 66 Ind., 474; Re Willoughby, 11 Paige, Ch. 257; Lloyd v. Fueton, 91 U. S.,

479.) Third, the contract was a secret one. The wife should not be permitted to hold her husband out as the owner of the premises, contract debts upon the credit thereof, and then by taking title to herself, defeat the claims of these judgment debtors. (Wait on Fr. Conv., Sec. 305; City Nat. Bk. v. Hamilton, 34 N. J. Eq., 162; Besson v. Eveland, 26 N. J., Eq., 471.)

*Lacey & Van Devanter,* for defendants in error.

All of the assignments of error which were grounds for a new trial cannot be considered here except as they are included in the motion for new trial. (Rule 13; U. S. v. Trabing, 3 Wyo., 144; Wolcott v. Bachman, 3 Wyo., 335; Wyo. L. & T. Co. v. Holliday, 3 Wyo., 657.) The only question to be discussed is whether the court erred in overruling plaintiff's motion for new trial. The letter to Mrs. Gavitt names the parties, the subject matter to be conveyed, and the consideration for the conveyance. It has every element of a sufficient and binding contract, excepting the acceptance of the other party. The subject matter is not described in detail, but parol evidence was competent to apply the description given to the thing itself. (Hurley v. Brown, 98 Mass., 545; Scanlan v. Geddes, 112 Mass., 15; Mead v. Parker, 115 Mass., 413.) The proposal contained in the letter is one which would become mutually binding upon the parties upon its acceptance. (Boston, etc., R. R. v. Bartlett, 3 Cush., 224; Wheaton v. Rampacher, 3 Wyo., 441.) The second letter shows that Price recognizes his obligation, and the two letters were competent evidence as a written memorandum of the promise, the marriage being a sufficient consideration. (Kinnard v. Daniel, 13 B. Mon., 496; Wright v. Wright, 54 N. Y., 437.) The statute is satisfied by a letter written to a third party. (Moore v. Mountcastle, 61 Mo., 424; Moss v. Atkinson, 44 Cal., 3.) There was no error in admitting the parol evidence relating to the ante-nuptial contract, and the purpose of the conveyance by Price to his wife. (Sanborne v. Flagler, 9 Allen, 474; Smith & Fleck's App., 69 Pa. St., 474; Swisshelm v. Swissvale Laundry Co., 95 Pa. St., 367; Thayer

v. Luce, 22 O. St., 62.)   To explain the meaning of the terms used in the letter, the relation of the parties, etc.   (De Wolf v. Rabaud, 1 Pet., 476; Mead v. Parker, 115 Mass., 413.)   It was competent to negative actual fraud.   The motion for new trial was rightly denied.   A subsequent creditor, even if the conveyance was voluntary, there being no actual fraud, cannot ávoid it.   (Dygert v. Rennerschueider, 32 N. Y., 629; Monroe v. Smith, 79 Pa., St., 459; Shepard v. Thomas, 24 Kan., 780; Lehmberg v. Biberstein, 51 Tex., 457; Sledge v. Obenchain, 58 Miss., 670; Kirksey v. Snedeeor, 60 Ala., 192; Williams v. Banks, 11 Md., 198-249; Kane v. Roberts, 40 Md., 590; Pepper v. Carter, 11 Mo., 540; Payne v. Stanton, 59 Mo., 158; Miller v. Miller, 23 Me., 22; Quinby v. Dill, 40 Me., 528.)   The motion was therefore rightly denied as to the elevator company, because even if the Price letters and the parol evidence had been excluded, that company, being a subsequent creditor, was not entitled to assail the conveyance in question.   The motion was a joint one.   Unless it was good as to all, it should have been overruled.   (Miller v. Adamson, 45 Minn., 99; Dutcher v. State, 16 Neb., 30; Real v. Hollister, 17 Neb., 661; Boldt v. Budwig, 19 Neb., 739; Wigginhorn v. Kointz, 23 Neb., 690; First Nat. Bk. v. Colter, 61 Ind., 153; Feeney v. Mazalin, 87 Ind., 226; Boyd v. Anderson, 102 Ind., 217; Wolfe v. Kabel, 107 Ind., 565; Conant v. Barnard, 103 N. C., 315; Webster v. Tibbetts, 19 Wis., 438; Williard v. Reas, 26 Wis., 540; McGonigal v. Colter, 32 Wis., 614; Rudolph v. Brewer (Ala.), 11 So., 314; Bedell v. Security Co., 91 Ala., 325; McGehee v. Lenham, 65 Ala., 316; Kimbrell v. Rogers, 90 Ala., 339; Wall v. Bagby, 126 Ind., 372; Owen v. Cooper, 46 Ind., 524; Wharton v. Tilden, 110 Ind., 131; Arbuckle v. Swim, 123 Ind., 208; Rogers v. Ins. Co., 111 Ind., 343.)

*Brown & Arnold* and *N. E. Corthell,* in reply.

If the letters and oral conversations had been rejected there would have remained a presumption of fraudulent intent. The doctrine of the English courts, and the general doctrine prevailing in the American courts, is, that where a conveyance

is either constructively or actually fraudulent as to existing creditors, a subsequent creditor may have it set aside, especially if existing debts remain unpaid. (2 Bigelow on Fraud, 100-104, et seq.; Wait on Fraud. Conv., Secs. 97 and 104; Kehr v. Smith, 20 Wall., 31; Defarges v. Ryeland, 12 S. E., 305; Toney v. McGhee, 38 Ark., 427.) Where one of two parties jointly moving for a new trial shows sufficient cause the motion should be granted as to all. (Graham v. Henderson, 35 Ind., 195; Sparey v. Dickinson, 82 Ind., 132; Murray v. Ebright, 50 Ind., 362.)

CONAWAY, JUSTICE.

The above named plaintiffs in error commenced their separate actions in the district court for Albany County to subject certain realty, situated in Laramie in that county, to the payment of several judgments which they had respectively obtained against Barnard J. Price, one of the defendants in error. This realty had been conveyed by Barnard J. Price and May E. Price, his wife, to Jesse Converse, on December 14, 1888, and by him immediately conveyed to May E. Price, he acting merely as an intermediate trustee for the purpose of vesting the legal title to the property in May E. Price. These three parties are the defendants in error. These conveyances were attacked by plaintiffs as fraudulent and void as to the creditors of Barnard J. Price. The district court found in favor of the defendants, and the plaintiffs bring their cause to this court by their petition in error.

The pecuniary consideration of the transfer of the property from Barnard J. Price to May E. Price, his wife, by these deeds is admitted to be merely nominal. The actual consideration alleged is that of marriage, in pursuance of an ante-nuptial contract by which Barnard J. Price agreed to convey the property to May E. Gavitt, now May E. Price, in case of their intermarriage with each other.

The evidence tends to show that this alleged ante-nuptial contract was made before the majority of May E. Gavitt, though the marriage took place afterward. She, then a minor receiving the proposal of Barnard J. Price, referred him

to her mother, a widow, and her natural guardian. With the
concurrence of Mrs. Gavitt the marriage contract, and the al-
leged ante-nuptial contract for the settlement of the property
upon May E. Gavitt upon her marriage with Barnard J. Price
were made before she reached the age of majority.

Numerous errors are alleged by plaintiffs in error in the
admission by the trial court of certain parol testimony in
reference to the making of the alleged ante-nuptial contract
and in reference to the attendant circumstances. This is
claimed to be in violation of the statute of frauds.

Our statute of frauds provides that every agreement, prom-
ise or understanding made upon consideration of marriage, ex-
cept mutual promises to marry, shall be void unless such
agreement or some note or memorandum thereof be in writing
and subscribed by the parties to be charged therewith.

It will be observed that it is not required that the agree-
ment shall be in writing. It is sufficient that some note or
memorandum thereof be in writing. It would seem entirely
consistent with this statute that the fact that there was an
agreement made upon consideration of marriage should be
proved by parol. The agreement, however, would be void un-
less there were also shown some sufficient note or memorandum
thereof in writing subscribed by the party to be charged there-
with. It is certainly competent to show by parol testimony
the attendant circumstances in order to inform the court of
the position and condition of the contracting parties. It
was certainly not error to admit parol testimony showing that
May E. Gavitt was a minor at the time of the making of the
contract for her marriage, and the alleged ante-nuptial con-
tract for the settlement of the property upon her in the event
of marriage with Barnard J. Price; that her father had been
dead for many years; that Mrs. Nancy Gavitt was her mother,
and participated in the negotiations leading to these contracts,
and concurred in and approved of them. We find no preju-
dicial error in the admission of the parol testimony as to these
matters. And we proceed to inquire whether a sufficient writ-
ten note or memorandum of the alleged ante-nuptial con-
tract for the settlement of the property is shown.

The written note or memorandum relied on is in the form of a letter from Barnard J. Price to Mrs. Gavitt, and reads as follows:

"Dear Mrs. Gavitt:

"I have taken the liberty of writing you on a subject which "is so new to me that I fear I could not state my case in a "personal interview. You must forgive me if I have done "wrong in paying my attentions to May without your sanc-"tion, but all is fair in love and war, and I must trust to your "good nature to overlook it; the fact is May and I love each "other very much, and all we require to complete our happi-"ness is your consent to our engagement and ultimate union in "marriage. All I can say on my own behalf is that should "you see fit to trust her to my future care I will leave nothing "undone that will tend to her happiness and welfare. I am "prosperous in my business and have a nice house and lots, "which I intend to deed over to May when we are married, "should I be so fortunate as to be accepted as your son-in-law, "but don't mention this to her. Hoping to see you to-morrow "and receive your favorable answer, I remain,

"Yours very truly,

"Barnard J. Price."

Here is a proposition to marry which became a marriage contract when accepted; but it is urged that the language in reference to the conveyance of the house and lots in the event of marriage is not the language of promise or contract; that it merely expresses an intention of the writer—not a promise—which he might or might not execute at his own option. It is also argued that the inhibition "don't mention this to her," is inconsistent with the idea of a promise.

What might have been the proper construction of the language used if the mother had regarded the injunction and had not mentioned it to the daughter it is not necessary to consider. The fact is that Mrs. Gavitt immediately put her daughter in possession of the entire contents of the letter. No particular form of words is necessary to constitute a promise or agreement, or a note or memorandum thereof. Neither does it seem to be material whether the note or memorandum

is made before or after the conclusion of the negotiations if it is a correct statement of the resulting agreement. The note or memorandum required by the statute of frauds need not mention the party personally interested. The only obstacle to the marriage was the lack of the mother's consent, and it is not to be assumed that a promise to settle property on the daughter at her marriage made to the mother in order to obtain that consent would not be a valid promise though not communicated to the daughter. In order to obtain the consent of the mother, and the resulting consent of the daughter, he says, among other things, I "have a nice house and lots which I intend to deed over to May when we are married." No more specific words of promise or contract are used, but these words are treated as words of contract by all of the parties in interest. If the words are ambiguous or of doubtful import the understanding of their meaning by these parties is not. They are treated by all the parties in interest as words of promise and contract and are acted upon as such. They are as truly and effectively an inducement and consideration for the consent of the mother to the marriage and the resulting consent of the daughter as a formal bond could have been.

The acceptance of the proposition contained in this letter is properly shown by parol testimony. The resulting marriage occurred June 18, 1888. The deeds made pursuant to the ante-nuptial contract and now attacked as fraudulent were executed December 14th, 1888, and recorded the next day. The indebtedness of Barnard J. Price to the North Platte Milling and Elevator Company was incurred subsequent to these dates. This company can have no cause to complain of the delay in executing the deeds pursuant to the marriage settlement.

The indebtedness of Barnard J. Price to the Wyoming National Bank was incurred prior to the execution and record of the deeds in question. This bank may have cause to complain of the fact that Barnard J. Price was left in possession and apparent ownership of the realty involved from the marriage on June 18, 1888, to December following, when the

deeds were made and recorded, on the ground that he obtained credit from the bank on account of his possession and apparent ownership of the realty in question; and that May E. Price having permitted this state of facts to exist should not be permitted to take the property to the damage of this creditor.

It is true that a wife leaving the legal title of realty to which she is entitled in her husband, together with the possession, control and apparent ownership of the property, can not, after the husband has procured credit and incurred debts on account of the business standing which the apparent ownership of such property gave him, withdraw the property from the reach of legal process against the husband to the exclusion of the claims of creditors who have extended credit to the husband on account of such apparent ownership of such property. Such withdrawal is very generally considered as fraudulent and the deed from husband to wife by which the withdrawal is effected as void as to debts incurred during his possession and control of the property of his wife.

Some circumstances in this case are relied upon as requiring a relaxation of the rule. The wife testifies that the husband gave her the property at or about the time of the marriage on June 18, 1888. She seems to have thought that the property then vested in her. Her mother in December next ensuing became dangerously ill, and, anxious as to the condition of her daughter's affairs, made inquiry as to the matter and found that the conveyance of the property had not been made. The deeds in controversy were then made and recorded. In the meantime the financial condition of the husband seems to have declined and he was meeting his liabilities with difficulty, and by borrowing money, and the trial court finds that at the time of the conveyance of the property to his wife by the deeds dated December 14, 1888, he was insolvent. He made an assignment for the benefit of his creditors on the —— day of the following April. He was not insolvent at the time the marriage contract was made nor at the time of the marriage when the deed of the property to his wife should have been made. He did not consider himself insolvent on December

14th, when the transfer of title was made, but says that from the first of January succeeding from general depression in trade and other merchants in town selling cheaper than he could he "was working at a loss all the time." There could have been no fraud upon creditors in the ante-nuptial contract, or in carrying out the contract by deeds made at the time of the marriage. The difficulty arises from the wife's neglect to inform herself of the forms necessary to be observed in receiving the title from her husband, and requiring these forms to be complied with until her husband had contracted large debts and had become financially embarrassed. The evidence tends to show mere neglect on the part of the wife, but no actual intent to commit a fraud.

There is another consideration which is not without weight upon the question of the constructive fraud upon creditors implied from the fact of the possession and apparent ownership of the property in Barnard J. Price when the debts to the Wyoming National Bank were contracted by him. The property was and is a homestead and not subject to sale on execution in the ordinary way. To the amount of $1,500.00 it is exempt. Creditors desiring to subject it to sale are required to show by affidavit that it is worth more than $1,500.00, and they may then proceed to sell, paying the expense of the proceedings out of the proceeds of the sale, and $1,500.00 to the judgment debtor, and receiving any surplus themselves in discharge, pro tanto, of the judgment debts. The homestead in question was worth about $3,000.00. It may well be doubted whether a homestead of that value sold at sheriff's sale would produce much above costs and exemption to be applied to the payment of the judgment debts. The possession and ownership of such a homestead would not be a very effective basis for credit. Business men would more naturally look to the condition of the business and to the property employed therein and not encumbered by homestead rights as the property from which to secure the payment of their claims. It is beyond question that a conveyance of the homestead to the extent of the exemption by the husband to the wife could not be held to be fraudulent as to the creditors of the husband.

The district court found that the deeds conveying the legal title of the property in question from Barnard J. Price to his wife were not fraudulent as to creditors but were valid deeds, and rendered judgment in favor of defendants in error for costs.

We would be loth to disturb this judgment upon the considerations already advanced. But there is another consideration which seems conclusive to the same effect. The motion for a new trial is a joint motion of both plaintiffs in error. It is clear that the overruling of the motion was right as to the North Platte Milling & Elevator Company. This party could not have been misled and induced to extend credit to Barnard J. Price by his apparent ownership of the property in question, because they gave the credit after the deeds transferring the title to his wife were recorded. Whatever the law might be as to the Wyoming National Bank on a separate motion for a new trial, the joint motion was properly overruled. The cases relied upon by plaintiffs in error where voluntary conveyances made to defraud existing creditors have been set aside at suit of subsequent creditors are not in point. The conveyance in this case was not voluntary. It was made in execution of a valid ante-nuptial contract upon a good and valuable consideration, the consideration of marriage. The only possible fraud that can be charged against the grantee in this case is the constructive fraud of leaving the title to the property in her husband as a basis of credit from June 18, 1888, till December 15th of the same year when the deeds of conveyance to her were recorded. If there be a question whether the wife's equities are superior to the equities of creditors giving credit to the husband during this period there is no such question as to creditors who gave him credit afterwards.

The judgment of the district court is affirmed.

Groesbeck, C. J., having formerly been of counsel in this case, did not sit. The other justices called Richard H. Scott, judge of the First Judicial District to sit instead.

Clark, J., and Scott, Dist. J., concur.