## BACHMAN v. HURTT.

(No. 912; Decided Oct. 27, 1919; 184 Pac. 709.)

HOMESTEAD—EXEMPTION OF SEPARATE PROPERTY OF WIFE—EVIDENCE —PAROL EVIDENCE OF PURPOSE OF MORTGAGE ADMISSIBLE—MORTGAGES—RENEWAL OF MORTGAGE AS EXTINGUISHMENT OF LIEN.

1. A married woman, against whom a personal judgment is rendered, even though such judgment is also against her husband, is, under Comp. Stat. 1910—4615—entitled to a homestead exemption in her separate property on which she lived with her husband, though she is not the head of a family and as such entitled to the exemption provided by Sec. 4755.

2. Parol evidence is admissible to show the purpose for which a mortgage is given where it does not tend to contradict

the written evidence, and the notes and mortgages, but was for the purpose of proving an extraneous fact or surrounding circumstance, to-wit: The purpose and intention of the parties in making the transaction evidenced by the writing.

3.  Where there was a substitution of one mortgage for another upon the same property, without the payment of money, for the convenience of parties, the acts being practically simultaneous, and parts of the same transaction, with the intent that the debt and security shall continue, the result is a renewal of and not an extinguishment of the mortgage lien, and it does not give priority to an intervening judgment, even though there was a change in the mortgage debtor.

APPEAL from District Court, Sheridan County, HON. E. C. RAYMOND, Judge.

Action by Theodore Bachmann against Nora L. Hurtt and others. From an adverse judgment, Wyoming Loan and Trust Co. appeals.

*Clark and Wolcott,* for Appellant.

The former owner of the land, Ida M. Powers, not being the head of a family, was not entitled to a homestead exemption (Const. Art XIX, Jones v. Losekamp, 19 Wyo. 83); the judgment of the Trust Co. became a lien upon the cancellation of the old mortgage, which lien was superior to the new mortgage, taken by the plaintiff Bachmann. Under statutes similar to ours it is held that only the head of a family is entitled to the exemption (McGinnis v. Wood, 47 Pac. 492; Towne v. Rumsey, 5 Wyo. 11; Barry v. Assurance Co., 49 Pac. 148; Ness v. Jones, 88 N. W. 706); there being no homestead exemption, the judgment of the Trust Co. became a lien upon the release of the old mortgage; where a senior lien holder impairs the security of a junior lien holder by releasing the principal debtor from personal liability, he subordinates his lien to that of the second lien holder (Sexton v. Pickett, 24 Wis. 346; Barnes v. Mott, 64 N. Y. 397; McKeen v. Haseltine, 49 N. W. 195; Edwards v. Thom, 5 So. 707; Mather v. Jenswold, 32 N. W. 512;

Marple v. Marple, 65 Pac. 645; Conner v. Welsh, 8 N. W. 260).

*Metz and Sackett* for respondents, Nora L. and John M. Hurtt; *H. Glenn Kinsley,* for respondent, Theodore Bachmann.

Homestead exemptions are provided by the Constitution and Statutes of Wyoming (Art. XIX; 4755-4760 C. S.); the statute recognizes a homestead exemption in the separate property of the wife; a wife who is the owner of a homestead is considered the head of the family (McFee v. O'Rourke, 15 Pac. 420); the purpose of the statute is to protect the family (Orr v. Schraft, 22 Mich. 260; Edmondson v. Meecham, 50 Miss. 390; no designation other than occupancy is required by the Wyoming statute; the exemption is good as against mechanics' or laborers' liens for improvements (Lumber Co. v. Vance, 88 Pac. 896); the exemption applies to separate property of the wife, even though the husband is living thereon (Herring v. Johnson, 72 S. W. 793; Hardin v. Wolve, 29 La. Ann. 333). The case of McGinnus v. Wood, cited by the counsel, involved a purchase money mortgage, and is not in point; the requirements of occupancy precludes any danger of allowing two homestead exemptions; the discharge of the old mortgage did not give an intervening judgment priority, since the new mortgage was a mere renewal of the old one; moreover, the new mortgage was a purchase money mortgage; the mortgagors having assumed the payment of the old mortgage upon purchasing the land (Curtis v. Root, 20 Ill. 53; Jones on Mortgages, 399, 924, 927; Swift v. Kraemer, 13 Cal. 526; Childs v. Stoddard, 130 Mass. 110)'; a change in the form of the security, or the substitution of a new mortgage for the one given at the time of the purchase does not affect the operation of a renewal (Powers v. Pence, 20 Wyo. 339: Bankers Co. v. Hornish, 27 S. E. 459).

*Clark and Wolcott,* in reply.

The constitution does not contemplate two homestead exemptions; the right is limited to the heads of families;

Sec. 5610 C. S., adopted from California, has no application, since it relates to the selection of homesteads, for which we have no law. McFee v. O'Rourke and Lumber Co. v. Vance, cited by respondents, are not in point, owing to different constitutional provisions; there can be but one head of a family, and the phrase is synonymous with the owner of the home; the old mortgage was discharged and satisfied, and appellants' judgment took priority over the new mortgage; there are different mortgagors, so that the new mortgage cannot logically be considered a renewal of the old one.

WINTER, DISTRICT JUDGE.

This is an action to foreclose a mortgage dated August 5th, 1914. It secured a promissory note of the same date for $1,600.00, bearing interest at 10 per cent. These instruments were signed by the defendants, Nora L. Hurtt and John M. Hurtt. On February 24, 1914, the defendant Wyoming Loan and Trust Company, duly obtained and docketed a judgment in the District Court of Sheridan County for $1,620.30 and costs, against Ida M. Powers and her husband, E. E. Powers, at which time the said Ida M. Powers was the record owner of the real estate in question.

On August 6, 1914, Ida M. Powers and her husband sold the premises, subject to a mortgage of $1,600.00, to the defendant, Nora L. Hurtt, and on November 4, 1914, the sale was consummated and possession transferred.

In June, 1910, one Spracklen and wife, then the owners of the premises, gave a mortgage for $1,600.00 to one Mary M. Kueny. Thereafter, and prior to the judgment of the defendant, Wyoming Loan and Trust Company, the Kueny mortgage was assigned to plaintiff.

The defendants, Nora L. Hurtt and John M. Hurtt, filed an answer and cross-petition in which they admitted the judgment of the Trust Company, but alleged that the said Ida M. Powers and E. E. Powers were, at the time said judgment was rendered, occupying said premises as a homestead, and that the mortgage in suit was given to take the place of the Kueny mortgage above mentioned, which had

never been paid and that at the time the property was purchased by them from Powers its value did not exceed $2,400.00.

The case was then tried upon the theory that the former owner, Ida M. Powers, had a homestead interest in the real estate in question, which was exempt from levy and sale on execution under the Trust Company's judgment; that the homestead interest amounted to $1,500.00 (the then statutory limit of exemption); that the mortgage given in 1910 by Spracklen for $1,600.00 to Kueny and assigned to Bachmann, the plaintiff, in 1911, was never paid; that there was a substitution in its place of the new note and mortgage and its purpose was to continue the security of the old mortgage; and that the said homestead exemption and the new note and mortgage herein sued upon were superior to the judgment of the Trust Company. Further, that the lien, if any, of the Trust Company's judgment could be satisfied, if at all, only out of any equity there might be in this property, over and above $3,100.00; that the property never at any time had a value equal to $3,100.00, and that therefore the property passed from Powers to Hurtt free and clear of any lien of the Trust Company.

Upon the trial of the case, the District Court, upon the law and the evidence, sustained this theory, made findings of fact and conclusions of law in conformity therewith, and rendered judgment for the plaintiff, denying the lien of the Trust Company. The defendant, Wyoming Loan and Trust Company, appeals.

The first question in this case is: Was the former owner of the land, Ida M. Powers, entitled to a homestead interest or exemption in the premises?

The provision of our constitution was, and is, as follows:

Article 19 of the Constitution: "Homesteads, Section 1, Exemption Of. A homestead as provided by law shall be exempt from forced sale under any process of law and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes or for the payment of obliga-

tions contracted for the purchase of said premises, or for the erection of improvements thereon."

The statutory provisions regarding homesteads are Sections 4615, 4755, 4756, 4757, 4760, 5610. Sec. 4755, Compiled Statutes 1910, in force at the time of the transactions herein involved, is as follows:

"Every householder in the State of Wyoming, being the head of a family, and every resident of the State who has reached the age of sixty years, whether the head of a family or otherwise, shall be entitled to a homestead not exceeding in value the sum of Fifteen Hundred Dollars, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred."

The authorities and arguments of counsel for the parties hereto centered upon the above section as the positive act creating "a homestead as provided by law".

The contentions of counsel were upon the meaning, scope and limitations of the words "being the head of a family". Had this been the only section contained in our statutes bearing directly upon the question, it might be contended with considerable support. from the authorities submitted and examined, that Ida M. Powers (the property being in her name), living upon the premises, with her husband and family, the husband supporting and maintaining them, could not be considered as "the head of a family" within the meaning of the above Section 4755. But we need not review the cases and the arguments upon this question or determine what the law would be were it to rest on Section 4755 alone, as the positive statute on the subject, as the matter is placed beyond controversy by Section 4615, Compiled Statutes 1910, which is as follows:

"When a married woman sues or is sued alone, like proceedings shall be had, and judgment may be rendered and enforced as if she were unmarried, and her separate property and estate shall be liable for the judgment against her; *but she shall be entitled to the benefit of all exemptions to heads of families."*

The Ohio Code, section 5319, Revised Statutes of 1880, was identical with our section 4615. That section in the Ohio Code was amended in 1884, but without any change except the omission of the word "alone" following the words "when a married woman sues or is sued", which change was made because of the amendment of another section of the code in the same amendatory act which provided that a married woman shall sue and be sued as if she were unmarried, and that her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband. We do not regard that difference in the present Ohio statute as material so as to create any distinction in construing the last clause of the section entitling the married woman against whom a personal judgment is rendered to the benefit of all exemptions to heads of families. Nor was it regarded as material in that respect by the courts in Ohio. Before as well as after the amendment the statute was construed as giving a married woman the exemptions aforesaid under a judgment rendered against her. Under the statute as it read in 1880, identical with our statute, it was held in Patrick v. Littell, 36 O. St. 79, decided at the January Term, 1880, wherein a married woman was sued jointly with her husband upon a contract for the payment of money, that the statute gave her such exemptions as are provided for heads of families, since, quoting from the opinion in that case, "she might have been sued alone." The court said:

"It is a contract or obligation upon which, under section 28 of the Code, as amended March 30, 1874, she might have been sued alone; and being of that character, the statute requires the like judgment to be rendered and enforced, in all respects, as if she were unmarried (71 Ohio Laws, 47). It was one of the objects of this section, as thus amended, to so far modify the disabilities of coverture, as to authorize a personal judgment to be rendered against a married woman, where such judgment would have been proper, had she remained unmarried. * * * Prior to the date at which a personal judgment was authorized, the decree, according to the English practice, and that of some of the

states, was directed against the estate, declaring the separate estate vested in the wife at the date of the decree which it was within her power to dispose of, chargeable with the payment of the debt.  *  *  *  But under the statute as amended, the same judgment is required, with the same process for its enforcement as would be awarded if the wife were sole; and, saving to her such exemptions as are provided for heads of families, her separate estate is made liable for any judgment rendered against her, to the same extent as would be the property or estate of her husband, for any judgment rendered against him."

In Hill v. Myers, 46 O: St. 83, 19 N. E. 593, decided at the January Term, 1887, Dickman, J., referring to said section 5319, Ohio Revised Statutes, says:

"But in proceeding by way of execution against the wife's separate property, the law has in a liberal and humane spirit, guarded all her rights of homestead.  It is provided by Section 5319, *supra,* that she shall be entitled to the benefit of all exemptions to heads of families"  *  *  *  "With the changed remedy against a married woman, allowing a personal judgment followed by execution, goes *pari passu* the statutory protection of her homestead." ·

This position is further supported by Kimmel et al. v. Paronto, 52 O. St. 469, 43 N. E. 1040, and Shaw v. Foley, 62 O. St. 30, 56 N. E. 475.  These cases, construing the Ohio provision, are conclusive, and on Section 4615, together with Sections 4755 and the other sections mentioned which harmonize with this view, we hold that Ida M. Powers had a homestead interest in the premises which was exempt, that the judgment of the appellant, Wyoming Loan and Trust Company, did not attach and said company was not entitled to a judgment for a lien on the premises.

The second question to be determined is whether the discharge of the Spracklen-Kueny mortgage automatically made the judgment of the Trust Company a prior lien.  The answer depends upon the facts as to whether the Hurtt-Bachmann mortgage was given for the purpose and with the intention of continuing the security of the old mortgage.  It

is urged by appellant that the trial court erred in admitting oral evidence to show this fact.

We think the evidence was admissible, as it did not tend to contradict the written evidence and the notes and mortgages, but was for the purpose of proving an extraneous fact or surrounding circumstances, to-wit: the purpose and intention of the parties in making the transaction evidenced by the writing. It is possibly in the nature of a separate, oral agreement on a subject not included in or disclosed by the writings, and not inconsistent with their terms (Ency. of Ev., Vol. IX, page 350, and cases cited). The evidence so admitted proved beyond question that such was the intention of all the parties thereto. This was not contradicted by the writings or any oral evidence. The evidence sustains the findings of fact of the trial court upon this point.

There was a substitution of one mortgage for another, without the payment of money, for the convenience of the parties, the act being practically simultaneous and parts of the same transaction, with the intention that the debt and security should continue.

"Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage" (27 Cyc. 1222, and cases cited. Packard v. Kingman, 11 Ia. 219; Ponder et al. v. Ritsinger et al., 1 N. E. 44; Jones on Mortgages, Par. 924, 927; Story Eq. Par. 1035 c, 1035e; Swift v. Kraemer, 13 Cal. 526; Childs v. Stoddard, 130 Mass. 110).

"The taking of a new note in place of the one originally given does not operate as an extinguishment of the mortgage lien, unless that is shown to be the actual and express intent

of the parties" (First National Bank v. Citizens' State Bank, 11 Wyo. 62).

"A change in the form of the security and the substitution of a new mortgage for the one given at the time of the purchase does not affect the operation of the rule, and the principle is not rendered inapplicable by the fact that the new or substituted mortgage is executed to a third party for money advanced or loaned for the purpose."

"And so where the money is borrowed for the purpose of paying the original purchase money mortgage upon the giving of a new mortgage to the lender to secure the amount, since the lender might have first taken an assignment of the first mortgage, and released it upon receiving a new mortgage in its place, the transaction may be regarded in equity as if that had been done, where the intention appears to have been to substitute the new for the old mortgage, giving the new mortgagee the same lien" (Powers v. Pence, 20 Wyo. 339, and cases cited; 20 Ency. L. (2nd Ed.) 1063).

The appellant insists that the above authorities are inapplicable because in this case there was a change of debtor and not merely a renewal between the same parties. The rule is clearly applicable where there is a change of creditor. We see no reason why the same rule should not apply where there is a change of debtor. There was no extinguishment of the debt. The intention of the parties as disclosed by the evidence was that the debt and the security should continue.

"The thing secured is the debt, rather than the note and other evidence thereof, and so long as the debt can be traced, whatever form it may assume, the security remains good as security for the debt" (First National Bank v. Citizens' State Bank, 11 Wyo. 62; 20 Ency. L. (2nd Ed.) 959; 2 Jones on Mort. 924; Simmons Hardware Co. v. Thomas, 147 Ind. 313; Bray v. First Avenue Coal Mining Co., 148 Ind. 599; McCoughrin v. Williams, 15 S. C. 505).

In each of the cases cited by appellants the money was paid and the debt extinguished. Such were not the facts in the case at bar.

We conclude, therefore, under the evidence in this case, and the law applicable thereto, that the judgment of the Trust Company did not become a prior lien to the mortgage, and that, there being a homestead interest exempt, said judgment did not attach to or become a lien on the premises. The judgment of the District Court is affirmed.        *Affirmed.*

POTTER, J., and MENTZER, District Judge, concur.

HON. CHARLES E. WINTER and HON. WILLIAM C. MENTZER, District Judges, were called in to sit in place of BEARD, C. J., and BLYDENBURGH, J., who were unable to sit by reason of illness.

POTTER, JUSTICE.

Judge Winter, then Judge of the Sixth Judicial District, having sat as a member of the court upon the submission of this cause, prepared the foregoing opinion prior to his recent retirement from the office of District Judge, upon resigning that office, to be filed as the opinion of the court in the cause. But the absence of a majority of the sitting judges prevented an order disposing of the cause prior to Judge Winter's vacation of his office. The opinion expresses the conclusions of the court upon the questions submitted, and its reasons for disposing of the cause by affirming the judgment, and the same is now ordered filed as the opinion of the court in the cause.

I deem it proper, however, to add something, in a concurring opinion, upon the question of the right of Ida M. Powers to a homestead exemption as against the appellant's judgment, under section 4615, Compiled Statutes, 1910, that section not having been referred to by counsel in any of the briefs.

The appellant's judgment was obtained on February 24, 1914, and was against Ida M. Powers, and her husband, E. E. Powers. At that time the property was encumbered by a recorded mortgage for $1,600, given on June 27, 1910, by one Spracklen and wife, then the owner of the property, to Mary M. Kueny, which, prior to the date of said judgment had been assigned to the plaintiff Bachmann. Prior

to the date of said judgment also, through mesne convey-ances and a sufficient deed to her, Ida M. Powers became the owner of the property, who then and thereafter re-sided thereon with her husband and their six children until sometime in 1914, subsequent to the date of said judgment, when she sold and conveyed the property, her husband join-ing in the deed, to Nora L. Hurtt, one of the defendants in the court below and a respondent here, said grantee there-upon entering into possession and occupancy of the premises and residing thereon with her husband and children; and Mrs. Powers and her husband then entering into possession and occupancy of other land contemporaneously conveyed to her by Mrs. Hurtt as a part of the consideration for the sale and conveyance of the property in question; Mrs. Hurtt assuming the Bachmann mortgage, and Mrs. Powers with her husband executing a mortgage to Mrs. Hurtt upon the property conveyed to her for the amount of the Bachmann mortgage. No execution is shown to have been issued or levied upon the land under the appellant's judgment, but the appellant was joined as a defendant in the action to foreclose the Bachmann mortgage, executed by Mrs. Hurtt and her husband upon the land formerly owned by Mrs. Powers to take the place of the original mortgage executed by Spracklen and wife and assigned to Bachmann. And the appellant by answer alleged its judgment and that it constituted a valid and superior lien upon the premises.

The trial court found that the value of the property did not at any time during the period involved exceed in value the sum of $2,500; that the mortgage indebtedness thereon was at all times during said period the sum of $1,600, and at the date of the judgment in this cause amounted to $1,824.66, exclusive of costs; and, as a conclusion of law, that as the mortgage lien and homestead exemption ex-ceeded the value of the land the appellant was without any lien thereon at any time under its judgment.

Preliminary to a consideration of section 4615, under which Mrs. Powers is held by this court to have been entitled to a homestead exemption, it is well to call attention to

certain other sections of the Code relating to homesteads and judgment liens. The section declaring a homestead exemption in force until 1915, when it was amended by increasing the exemption from $1,500 to $2,500 (Laws 1915, Ch. 104, secs. 2 & 9), provided that every householder being the head of a family, and every resident of the state who has reached the age of 60 years, whether the head of a family or otherwise, shall be entitled to a homestead not exceeding in value the sum of $1,500, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred (Comp. Stat. 1910, sec. 4755). The succeeding section (4756) provides that such homestead shall only be exempt while occupied as such by the owner thereof, or the person entitled thereto, or his or her family, or while the owner is actually living within this state.

Section 4759 provides in substance that when a creditor shall be of the opinion that any homestead is of greater value than $1,500 (now $2,500), on filing an affidavit of that fact with the clerk of the district court, he may proceed against such homestead as in ordinary cases, and if it shall sell for more than $1,500 (now $2,500) and costs, the excess shall be applied to the payment of the demand of such creditor, but in all cases the sum of $1,500 (now $2,500), free of charge or expense, shall be paid to the owner of the homestead; and if it shall not sell for more than $1,500 (now $2,500) and costs, the one instituting the proceedings shall pay all costs thereof, and they shall cease without affecting or impairing the rights of the owner of the homestead.

The next succeeding section (4760) provides that in case of sale of a homestead on execution or otherwise, the proceeds of sale, not exceeding the amount of the exemption, shall be exempt from attachment or levy on execution, and any subsequent homestead acquired by the proceeds thereof, shall also be so exempt, and no judgment or other claim against the owner of such homestead shall be a lien against the same, in the hands of a bona fide purchaser for a valuable consideration.

A judgment lien is provided for as follows: Section 4683, Comp. Stat., declares that lands and tenements, including vested interests therein, and permanent leasehold estates, renewable forever, and goods and chattels, *not exempt by law,* shall be subject to the payment of all debts, and shall be liable to be taken on execution, and sold as thereinafter provided. It is provided by section 4684 that "such lands and tenements", within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands shall be bound from the time they are seized in execution. Thus a judgment lien without levy of execution, exists under the statute only upon lands and tenements "not exempt by law". So that to give appellant's judgment the standing of a lien upon the land in question while owned and occupied by Mrs. Powers, it must not have been exempt by law, though upon filing an affidavit that the homestead was of greater value than the amount of the exemption, it might have been proceeded against by the creditor under section 4759, subject to the conditions therein stated. The record does not show that any such proceeding was instituted by the appellant in this case. If the property was exempt, then, under the provision of the last clause of section 4760, the judgment would not be a lien against the land in the hands of Mrs. Hurtt, to whom it was conveyed by Mrs. Powers, for she was, without question, a bona fide purchaser thereof for a valuable consideration.

Appellant's only contention upon the question of a homestead exemption in the land in question is that Mrs. Powers was not the head of a family and was not entitled to a homestead exemption for that reason, and that therefore the judgment of the appellant became a lien upon her property subject only to the old Kueny mortgage which had been assigned to Bachmann; but that contention, as well as the

argument presented in support thereof, entirely ignores the provisions of section 4615, which was adopted as a part of our Code of Civil Procedure enacted in 1886, following the language of original section 5319 of the Ohio Code as published in the Revised Statutes of that state in 1880, which section had been construed by the Supreme Court of Ohio in a case cited in the opinion by Judge Winter, Patrick v. Littell, 36 O. St. 79. That case was decided at the January Term, 1880, and had reference to this provision of the code, though it refers to it by citing the chapter of the Ohio Laws of 1874, by which, through amendment, it became a part of the code, and as so construed it was held to save to the married woman against whom a judgment might be rendered and enforced thereunder as if she were unmarried the same exemptions as are provided for heads of families.

The only question that could possibly arise under that section affecting the right to such exemption would be whether it applies where the wife sues or is sued jointly with her husband. But that was not deemed material in the Ohio case cited, for in that case the action was brought against both husband and wife for services rendered and money paid for them under a contract signed by both of them. And it is clear, we think, that it is immaterial whether the wife is the sole party plaintiff or defendant, or sues or is sued jointly with her husband or with any other person, if it is sought in the action to recover a personal judgment or enforce a personal liability against her. The word "alone" in the phrase "when a married woman sues or is sued alone", is evidently used in the sense of *"feme sole"*, and it was intended to provide that when a married woman sues or is sued as a *feme sole,* or as unmarried, "like proceedings shall be had" &c. It reads: "When a married woman sues or is sued alone, like proceedings shall be had, and judgment may be rendered and enforced as if she were unmarried" &c. The use of the word "unmarried" in that connection seems plainly to indicate that the section was intended to apply to any action brought by or against a married woman as *feme sole*.

It was not unusual to speak of a married woman as suing or being sued alone, when expressing the thought that she might be sued as if unmarried. The manifest purpose of the provision was to authorize a personal judgment against a married woman in an action brought to enforce a personal liability on her part, and the enforcement of that judgment in the same manner as if she were unmarried. And certainly it could not have been intended that such purpose might be obviated by joining her husband or any other person with her as a party plaintiff or defendant, who might be also liable upon the same contract or for the same debt or obligation.

By amendment in 1884 of the section as it appeared in the Ohio Revised Statutes of 1880 the word "alone" was omitted. But in the act making that amendment a preceding section prohibited joining a husband with his wife in any action, except when the cause of action is in favor of or against both of them. That section amended section 4996 of the Ohio Code, and provided: "A married woman shall sue and be sued as if she were unmarried, and her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband." The commission appointed to redraft our code, and which reported the present code to the legislature of 1886, evidently took the section as it was found in the published revision of 1880 of the Ohio statutes, without noticing the amendment of 1884, or deeming it immaterial. But, as explained in the foregoing and in this opinion, the decisions under the provision were the same in Ohio before and after the amendment. Our code did not adopt section 4996 as found either in the Ohio Revised Statutes of 1880 or the Ohio amendatory act of 1884, but instead it was provided in our code that it shall not be necessary to join a husband with his wife as a party except in a case where it would be necessary to join him without reference to the fact of his marriage to such woman (Comp. Stat. 1910, sec. 4314).

Prior to the adoption of our Code in 1886, in view of the provision of the code then in force requiring that when a

married woman is a party her husband shall be joined with her, except that, when the action concerns her separate property, she may sue alone, and when the action is between herself and husband, she may sue or be sued alone, and the several provisions of the act of December 4, 1869 with reference to married women (Comp. Laws, 1876, Ch. 82), which authorized a married woman to sue and be sued in relation to her property, person or reputation, as if she were sole, and also to sue and be sued as if sole in regard to her trade, business, labor, services and her earnings, the question was unsettled whether the said act of 1869 or the provision of the code applied in suits brought by or against a married woman, even as to those cases provided for in said act of 1869. (See Granger v. Lewis Bros., 2 Wyo. 231.) A dissenting opinion in that case held that the Married Woman's Act, in the respect indicated, was not repealed by implication by the code of 1873 containing the provision aforesaid requiring a husband, except in the two cases mentioned, to be joined with his wife as a party. But the majority opinion held that it was unnecessary to determine the effect of said Married Woman's Act, holding, however, that the trial court erred in taking from the jury the issue as to the coverture of the defendant at the time of the transaction involved in the suit and the institution thereof.

Section 4615 aforesaid granting to a married woman under a judgment rendered against her the benefit of all exemptions to heads of families is in line with a provision of the debtor exemption statutes with respect to personal property which has been in force since 1871. Personal property of any kind or character to be selected by a debtor, being the head of a family and residing with the same, not to exceed the value of $500, is declared to be exempt, and it is then provided: "That in any case where the property before mentioned shall be the sole and separate property of the wife, it shall, to the same extent and for all purposes, be exempt for the debts of the wife" (Comp. Laws 1876, Ch. 48, secs. 2 & 4; Comp. Stat. 1910, secs. 4762, 4763).

Having concluded that the trial court properly found that

Mrs. Powers was entitled to a homestead exemption in the premises under the provisions of section 4615, it is not necessary to consider whether she would be entitled to such exemption under the provisions of the homestead statutes standing alone, or whether her husband would be entitled to such an exemption in the property held in her name. That property held in the wife's name might be a homestead, at least when conveyed to her by her husband, seems to have been the view of the court when deciding the case of North Platte Milling Co. v. Price, 4 Wyo. 293. In that case, where the property had been conveyed to the wife pursuant to an ante-nuptial contract, but after the husband had become indebted, and a creditor attacked the conveyance as fraudulent, the court, by Conaway, J., said: "The property was and is a homestead and not subject to sale on execution in the ordinary way. To the amount of $1,500.00 it is exempt." (See also Arp v. Jacobs, 3 Wyo. 489; 21 Cyc, 501, 507.) But it is not intended to decide the question in this case, nor is it clearly presented here by the findings or briefs. And of course but one homestead exemption in this property could be allowed.

The conclusion of the trial court that the amount of the prior mortgage lien should be first deducted from the value of the land in ascertaining the extent of the exemption, and that the exemption should be allowed as to the excess, is not questioned here, but that conclusion is amply supported by authority and is, I think, in accord with the spirit and a reasonable construction of our homestead statutes (21 Cyc. 492; 15 Am. & Eng. Ency. L. 692; Kilmer v. Garlick, 185 Ill. 406; Reames v. Morrow, 193 Ill. App. 155; Meyer v. Nickerson, 101 Mo. 184; Houf v. Brown, 171 Mo. 207; Hoy v. Anderson, 39 Neb. 386; Prugh v. Portmouth Sav. Bank, 48 Neb. 414; Morrill v. Skinner, 57 Neb. 164; Crosby v. Anderson (Utah), 162 Pac. 75; in re. Barrett's Est., 140 Fed. 569; Hinson et al. v. Adrian et al., 92 N. C. 121; White v. Fulghum, 87 Tenn. 281; White v. Horton, 154 Cal. 103, 97 Pac. 70, 18 L. R. A. (N. S.) 490, & note, citing cases).