## MEAD v. LEO SHEEP CO.[*]
### (No. 1145; January 20, 1925; 232 Pac. 511)

Pleading—Frauds, Statute of—Sufficiency of Memorandum—Construction.

1. Motions to make more definite and certain, and to strike portions of complaint, are addressed to sound discretion of court.

2. In action for breach of contract for sale of hay and pasture, denial of motion to make complaint more definite and certain by alleging whether contract was oral or written, and, if written, incorporating a copy of it and of motion to strike particular allegations, *held* not abuse of discretion.

3. Note or memorandum necessary to validate contract need not have been made contemporaneously with agreement.

4. Statements of account and letters between the parties showing names of parties, subject-matter, time, and con-

sideration *held* sufficient memoranda of contract.for sale of hay and pasture for several years to satisfy statute.

5.  That some of writings making up the memorandum of agreement were addressed to corporation's president personally, rather than corporation, *held* not to render it insufficient under statute, where it was apparent names were used interchangeably.

6.  Writings composing memorandum of agreement, when signed by party to be charged, *held* aided by each other, though one did not refer to another in view of coincidences in names, dates, references to subject-matter, and period affected.

7.  Statute of frauds should be liberally construed to prevent fraud.

\*NOTE—See Headnotes: (1) 4 C. J. p. 801; 31 Cyc. pp. 643, 645; (2) 31 Cyc. pp. 643, 645; (3) 27 C. J. p. 263; (4) 27 C. J. p. 261; (5) 27 C. J. p. 261; (6) 27 C. J. p. 262; (7) 27 C. J. p. 303.

ERROR to District Court, Carbon County; VOLNEY J. TIDBALL, Judge.

Action by Leo Sheep Co., a corporation, against W. H. Mead. Judgment for plaintiff, and defendant brings error.

*N. R. Greenfield* for plaintiff in error.

The Court erred in denying defendant's motion for a more definite statement. Defendant was entitled to know whether the contract was oral or in writing; Schmid v. Schmid, 37 Nebr. 639, 56 N. W. 207; Sinway v. Kitzman, 28 S. D. 577, 134 S. W. 325; Lonbard v. Bank, 107 La. 183 31 So. 654; Rocky v. Haslett, (N. Y.) 86 N. Y. S. 320. The receipt and evidence was insufficient to satisfy the statutes of frauds, 3751-52, 27 C. J. 312; Page Conts. 2403. Oral evidence can bring together different writings, but cannot connect them to satisfy the statute, 27 C. J. 262; Pottery Co. v. Onken Bros., 26 Wyo. 287; Fowler Co. v. Catterell, 8 Nebr. 512, 57 N. W. 19; Cunha v. Callery, (R. I.) 69 Atl. 1001; Feichen v. Korn, 123 N. E. 355; North v. Mendel, (Ga.) 54 Am. Rep. 879; Boardman v. Spooner, 90 Am. Dec. 196; Ridgway v. Ingram, (Ind.) 19 Am. Rep.

706; Turner v. Lorillard Co., (Ga.) 28 S. E. 383; the memorandum must contain the substantial terms of the contract to satisfy the statute. The Court erred in taking the testimony of witness Vivion from the jury by its instructions; 20 Cyc. 320; 6 R. S. L. 249; the existence of a contract is a question for the jury. St. Louis Co. v. Wiggins Co., 102 Ill. 514; Holmes v. Foss, 131 Mich. 487; Greenbaum v. Stern, (Wash.) 155 Pac. 751; Bloom v. Stephen, (Kan.) 182 Pac. 545. Instruction numbered 3 was prejudicial as shown by the foregoing authorities. The Court erred in refusing instructions offered by defendant.

*Brimmer & Brimmer* and *Corthell, McCollough & Corthell* for defendant in error.

A petition alleging a contract, is sufficient without stating whether it is in writing. Browne St. of Frauds 505, except where the Code requires an allegation that it is written, 20 Cyc. 308; Andrew Stephens Pl, 228. The general rule obtains in Ohio; Headington v. Neff, 7 O. 228; Remheimer v. Carter, 31 O. S. 579; Smith v. R. R. Co., 11 N. P. N. S. 65. Our procedure is taken from Ohio, so the rule obtains here and finds almost universal concurrence among the authorities. The contention that the damage should have been confined to date of the alleged breach was not raised at the trial and is unworthy of discussion. There was a memorandum of the agreement sufficient to satisfy Sec. 3751 C. S. Rowell v. Barber, (Wis.) 125 N. W. 937; 27 C. J. 309-12. Our own Statute of Frauds has been construed by the Federal Circuit Court of Appeals. Mine & Smelter Co. v. Bank, 173 Fed. 859; holding a cashier's check to be a sufficient memorandum; a subsequent memorandum is sufficient, 27 C. J. 263; Handy v. Barclay, (Conn.) 119 Atl. 227; Galoob v. Rock, (Okla.) 211 Pac. 73; Barton v. Molin, (Mich.) 189 N. W. 74; Whitewell v. Wyer, 11 Mass. 6, Sheshy v. Fulton, (Nebr.) 57 N. W. 395; the point is fully covered in North Platte Co. v. Price, 4

Wyo. 293; the memoranda contained all of the essentials of a contract, except the price and mention of the pasturage. Various memoranda may be connected by parol evidence. Beckwith v. Talbot, 95 U. S. 289; No. Platte Co. v. Price, supra. Illustrations of the rule are shown in the following cases; Smith v. Colby, 136 Mass. 562; Marks v. Cowdin, 226 N. Y. 138; Thayer v. Luce, 22 O. S. 74; Benjamin on Sales, page 193; 27 C. J. 262; Brewer v. Horst Co., (Cal.) 60 Pac. 418. The rule requiring memoranda to contain reference to each other, applies only to unsigned memoranda. Keithley v. Craig, 135 N. E. 156. Immemorial custom and usage will be judicially noticed by the Court, 12 Cyc. 1231. In construing the contract and giving instruction complained of, the trial Court went beyond its authority, Monnet v. Monnet, 46 O. S. 30; Boswell v. Bank, 16 Wyo. 161; Genesee Bank v. Kindt, 7 Wyo. 321. Meads testimony did not conflict with the correspondence and evidence, but if it had, the writings would stand, 17 Cyc. 632; Stickney v. Hughes, 12 Wyo. 397. The trial Court was in duty bound to draw its conclusions of law from the writings constituting the agreement.

RINER, District Judge.

The Leo Sheep Company, a Wyoming Corporation, hereinafter designated as "Plaintiff" instituted this action in the District Court of Carbon County against W. H. Mead, hereinafter called the "Defendant" to recover on account of the breach of an alleged contract for the sale of hay and pasturage. The issues below were made up by a third amended petition, an answer and a reply.

The third amended petition alleges in substance the incorporation of the plaintiff, its ownership of a large amount of sheep and cattle needing hay and other feed during the winter season, and that the defendant was the owner of certain described lands in Carbon County, Wyoming, which produced large quantities of hay and pasturage; that

"on or about January 1st, 1915, the plaintiff and the defendant entered into an agreement whereby the defendant agreed to sell and the plaintiff agreed to purchase all of the hay grown and produced by said defendant upon his said lands, except the hay which he might need for his own use, and the hay which Andy Nelson & Co. might purchase, or might thereafter contract to purchase from the defendant for their own use, and also all the pasturage on said lands all during the period of five years from January 1, 1915 to January 1, 1920, all at the price of $6.50 per ton for the quantities of hay so purchased by the plaintiff, and all provided the said ranch lands should not be sold."

That the plaintiff duly performed all of the conditions of the agreement on its part; that the defendant carried out his part of the contract during the years 1915 and 1916, but thereafter failed in and refused performance, though the plaintiff was at all times ready to perform its part; that demand was upon several occasions made on defendant that he comply with the contract's requirements and that he declined to do so; that in each of the years 1917, 1918 and 1919 the defendant raised approximately four hundred tons of hay in excess of his own needs, and the amount required by Andy Nelson & Co.; that on account of defendant's default plaintiff was required to purchase elsewhere quantities of hay, grain, cottonseed cake and pasturage for its livestock at prices in excess of the price agreed to be paid defendant, these payments being specifically set out. Other damages are alleged on account of hire of extra help, the enforced location of the livestock upon the open range, depreciation in wool and diminution in weight of the livestock and loss from exposure and starvation. It is finally charged that while the defendant knew the consequences which would follow from a failure to furnish plaintiff's stock with the feed required by the contract, yet he wilfully declined to perform his agreement.

To this pleading defendant interposed a motion to require it to be made more definite and certain by alleging whether the agreement was oral or in writing and if in writing that it be set forth in the petition, and also to strike certain portions thereof particularly where it was alleged that the defendant knew of the consequences of failure to supply the feed yet wilfully refused to do so. This motion was denied by the trial court and a separate bill of exceptions is before us to present the ruling and exception thereto, reversible error being assigned thereon.

An answer was filed admitting plaintiff's incorporation, defendant's ownership of the described lands, and denying all other allegations contained in plaintiff's third amended petition; there was also an affirmative plea of the statute of frauds. This affirmative matter was met by denial through plaintiff's reply.

The cause was tried to a jury and a verdict returned in favor of the plaintiff in the sum of Twenty-five hundred dollars. Judgment was rendered thereon, defendant's motion for new trial being overruled, this proceeding in error instituted by the defendant brings the cause here for review. Error is assigned because of the denial of defendant's motion for a new trial.

The point first presented for consideration is the alleged error of the trial court in not sustaining defendant's motion to make the plaintiff's pleading more definite and certain and to strike certain parts thereof, as heretofore mentioned. Proceedings of this nature are addressed to the sound discretion of the trial court and we see nothing in the way the issues were finally framed in the cause or in the subsequent proceedings at the trial to indicate that this discretion was abused or that defendant was injured or prejudiced in the slightest degree by the ruling here attacked. He was able to present whatever defenses he saw fit to employ and fully and fairly had the judgment of the court upon them. Indeed, it was not urged either in the brief or the argument of the defendant that there

had been an abuse of discretion on the part of the trial court in this connection. That the weight of authority supports this view as the one which should be adopted by an appellate court in reviewing such a ruling see 4 Corpus Juris 801, Secs. 2758, 2760, and extended list of cases cited; also 21 R. C. L., Secs. 144, 146 and cases cited.

At the time of the transaction involved in the case, the statute of frauds of this State provided as to agreements by their terms not to be performed within one year from their making, and as to contracts for the sale of goods and chattels, that they should be "void" unless there should be a "note or memoranda" thereof "in writing" and "subscribed by the party to be charged" thereby. On the trial there were received in evidence on plaintiff's behalf, and over defendant's objections, certain writings, among which appeared the following as Exhibit "1" reading:

"RECEIPT

WHEREAS W. H. Mead heretofore entered into an oral contract with the Leo Sheep Company for the sale by the said W. H. Mead to Leo Sheep Company of all hay grown and produced by the said W. H. Mead upon his lands southeast of Walcott in Carbon County, Wyoming, less the hay which the said W. H. Mead may need for his own use and less what hay Andy Nelson & Co. may purchase or may hereafter contract to purchase from the said W. H. Mead for their own use, and

WHEREAS by the terms of said oral agreement all of such hay raised by the said W. H. Mead, subject to the above reservations, during the ensuing period of five years commencing with January 1st, 1915, was to be sold and delivered by the said W. H. Mead to Leo Sheep Company upon the agreed terms, providing ranch is not sold, and

WHEREAS the said W. H. Mead is desirous of obtaining a cash payment upon the purchase price of the hay so sold to Leo Sheep Company, and

WHEREAS the Leo Sheep Company has paid to the said W. H. Mead upon this date the sum of One Thousand and 00/100 ($1000.00) Dollars as part payment upon the hay contracted to be sold and delivered by the said W. H. Mead to Leo Sheep Company,

NOW, THEREFORE, the undersigned, W. H. Mead, does hereby acknowledge receipt from the Leo Sheep Company upon this day of the sum of One Thousand and 00/100 ($1000.00) Dollars, as part payment upon the purchase price of hay sold and to be delivered by the said W. H. Mead to Leo Sheep Company in the year 1915, upon the terms agreed upon between the said W. H. Mead and the Leo Sheep Company.

Dated at Rawlins, Wyoming, this 20th day of July, A. D. 1915.

(Sgd)   W. H. Mead

Witness: (Sgd)   Geo. A. Bible''

Exhibit ''5-a'', reading:

''Walcott, Wyo. 11-3-15.   Mr. L. E. Vivieon, Rawlins, Dear Sir:   I was at Saratoga last week and was informed that hay and pasture was about three Dollars higher than last year the cause being a short crop.   Yours truly,

(Sgd)   W. H. Mead.''

Exhibit ''5-b'', reading:

''Walcott, Wyo. 11-3-15.   Leo Sheep Co. to W. H. Mead,

| | |
|---|---|
| Dr. 5-3 5760# hay at $10.00 | $   28.80 |
| 10-12 324,496# hay & pasture at 9.50 | $3083.71 |
| | $3112.51'' |

Exhibit "15" reading:

"Rawlins, Wyo. Nov. 17, 1915.   Mr. W. H. Mead, Walcott, Wyo.

Dear Sir:   Your letter of the 3rd, together with statement due for hay received.   Our agreement last fall was for the purchase of all of your hay with the exception of what Andy Nelson takes and what you need for yourself, together with the pasture at $6.50 per ton, including pasture.   The fluctuation of the price of hay at Saratoga does not have any bearing on our contract.   However, you have been mis-informed in regard to the hay market in Saratoga, as Mr. Lew Davis offered to feed his hay to my cattle for $7.00 per ton.   Sterrett offered to take $6.50 with pasture thrown in.   Mr. H. Rasmusson of Rawlins advertised in Saratoga and Rawlins for hay and pasture and had many offers as cheap as the above and finally closed with Mr. Schoen of Elk Mountain, who feeds his cattle for $4.00 per head until May 1st.   As stated above the reason for making the contract was to have a definite understanding as to the delivery of hay and price thereof.   Please forward correct bill for the hay measured in October for $6.50 per ton, including pasture.   The bill of the 5760 lbs. received in the spring is O. K.   Very truly yours, (Sgd) L. E. Vivion."

Exhibit "6-a", reading:

"Walcott, Wyo. 11-20-15.   Mr. L. E. Vivion, Rawlins,

Dear Sir:   Yours of the 17th at hand contents noted and agreeable if the 6.50 is to be the fixed price for the remaining years and also the sale of the ranch which I see you omitted.   I got it in my head that you would consider market prices each year and that idea is still there consequently I went to Saratoga and had information which previously I wrote you.   Yours truly, (Sgd) W. H. Mead."

Exhibit "6-b", reading:

"Walcott, Wyo. 11-20-15.   L. E. Vivion, to W. H. Mead,
Dr. 10-12 324,496 tons at 6.50                    $2109.20
          5760# baled                                  28.80
                                                   _____
                                                    2138.00
Paid 12-6-15   W. H. Mead."

The signatures affixed to these papers were all duly proven.

As to this evidence it is contended by the plaintiff that as the memoranda above recited were all made at some time after the alleged contract, they cannot be invoked to give vitality to a contract which our statute, in terms, declares to be "void." But this would seem to disregard the proviso in the law: "unless" there be a "note or memoranda" thereof "in writing" and "subscribed, etc." The statute does not say that the "note or memoranda" must be made contemporaneously with the agreement. The question of the validity of the contract would not arise until one or the other of the parties to it sought to enforce its provisions. If there were in existence at that time writings complying with the statute's proviso, it would seem reasonable that that fact would establish the contract's validity and fully meet the statute's requirements. And so have been the decisions regardless of whether the statute read "void" or "invalid," or "no action shall be brought." In the case of North Platte Milling & Elevator Company v. Price, 4 Wyo. 293, at 302, 33 P. 664, 665, this court said:

"No particular form of words is necessary to constitute a promise or agreement, or a note or memorandum thereof. Neither does it seem to be material whether the note or memorandum is made before or after the conclusion of the negotiations if it is a correct statement of the resulting agreement."

In 25 Ruling Case Law, 640, Sec. 268, the text reads:

"No distinction is to be made as regards the time of making the memorandum between contracts of the class included within Sec. 4 of the English statutes, which provides that no action shall be brought to charge the party, and Sec. 17, which provides that no sale of goods, etc. 'shall be allowed to be good', or 'shall be valid.'"

In California, where the statute of frauds declares certain agreements "invalid" unless there be a note or memorandum subscribed by the party to be charged, the appellate court of that state in the case of In re Balfour & Garrette, 14 Cal. App. 261, 266, 111 Pac. 615 at 618, has said:

"However, should we feel required to view the statute as it reads in this state as affecting such contracts themselves, or, in other words, as constituting the writing as an essential element of the contracts themselves, we can even then perceive no sound or just reason in principle why, if originally fatally defective in the respect referred to, they could not be made valid by a subsequent writing, sufficiently clear and definite to disclose the terms and conditions of the agreement, somewhat in analogy to the principle which sustains a transaction in which an agent has performed some act in excess of his authority as such and in which the principal has subsequently ratified such act."

In Townsend v. Kennedy, 6 So. Dak. 47, 60 N. W. 164, where the Statute of Frauds was identical with that in California, in the use of the word "invalid," the court said:

"It will be observed that in both sections the only requirement is that the agreement or some note or memorandum thereof shall be in writing and signed by the party to be charged. The note or memorandum may be made subsequently to the agreement."

To the same effect under a similar statute is the case of Galoob v. Rock, 88 Okla. 35, 211 Pac. 73, decided by the Supreme Court of Oklahoma.

Corpus Juris declares the rule to be (27 C. J. 263, Sec. 312, and cases cited),

"The memorandum of the contract required by the statute of frauds may be made subsequently to the making of the contract itself, and at any time before an action is brought on the contract."

The case of Brandeis v. Neustadtt, 13 Wis. 158, is cited by the defendant under a statute where the word "void" is used as in ours, but in the later case of Rowell v. Barber, 142 Wis. 304, 125 N. W. 937, 27 L. R. A. (N. S.) 1140, it was said:

"It is true that the statute does not provide expressly when the note or memorandum shall be made and signed, and doubtless this might be done after the oral agreement was made and render such an agreement valid where the relations of the parties had not changed and no rights intervened."

But it is insisted that the writings offered in evidence and quoted above do not constitute sufficient memoranda to satisfy the requirements of the statute of frauds of our state. This court said in North Platte Milling Co. v. Price, supra, that:

"It will be observed that it is not required that the agreement shall be in writing. It is sufficient that some note or memorandum thereof be in writing. It would seem entirely consistent with the statute that the fact that there was an agreement made upon consideration of marriage should be proven by parol. The agreement, however, would be void unless there were also shown some sufficient note or memorandum thereof in writing sub-

scribed by the party to be charged therewith. It is certainly competent to show by parol testimony the attendant circumstances in order to inform the court of the position and condition of the contracting parties."

In Pottery Co. v. Onken, etc., Co., 26 Wyo. 287, 183 P. 747, where there was but one signed writing before the court, and not several, as here, the rule as given in 20 Cyc. 258, is quoted with approval, that:

"In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or by reference contained in it to some other writing, without recourse to parol proof to support them."

Supplementing these principles is another, referred to by the Supreme Court of Ohio, in the case of Thayer v. Luce, et al. 22 Ohio St. 62, where it was said:

"If one only of such papers be signed by the party to be charged in the action, the rule seems to be that special reference must be made therein to those papers that are not so signed; but if the several papers relied on be signed by such party, it is sufficient if their connection and relation to the same transaction can be ascertained and determined by inspection and comparison."

See Sec. 581, Vol. 1, Williston on Contracts. And 27 Corpus Juris, 263, declares:

"Where each of the writings is signed express reference from one to the other need not exist, provided it appears from inspection and comparison that the writings severally relate to the same subject matter and transaction."

See also, Sec. 348, Brown on Statute of Frauds, (5th Ed.)

Viewed in the light of these authorities it is clear that the several writings upon their faces, taken in connection with the situation and circumstances of the parties at the time they were written, relate to and connect themselves with each other and the subject matter of the transaction. When their contents are construed according to their reasonable and practical import, involving in form and order the manifest sense and meaning of the parties, there are certainly disclosed the "essentials" of the contract sued upon, viz: the names of the contracting parties, the subject matter accurately described, including the period covered by the alleged agreement, and the consideration thereof. All these elements received the sanction of the subscription of the party sought to be charged in this action.

It is said that as some of these writings were addressed by the defendant to Mr. Vivion they would inferentially show a personal contract with the latter. But it appears in the record that Mr. Vivion was both a director and president of the plaintiff corporation and that Mr. Mead used Mr. Vivion's and the Leo Sheep Company's name interchangeably in referring to the transaction. Among the instances of this may be cited Exhibits 5-a and 5-b, where the letter of the defendant concerning the transaction is addressed to Mr. Vivion personally and is accompanied by a bill for hay to the "Leo Sheep Co.," and in Exhibit 3 where plaintiff writes to Mr. Bible, who was a director and also the treasurer of the Leo Sheep Company, for an advance payment on "the Vivieon deal." Exhibit 3 was written just forty-five days after the defendant had signed the receipt, Exhibit 1, reciting terms of a contract with the plaintiff corporation. There is nothing in the record which could lead us to infer that meanwhile there had been another contract of similar character entered into with Mr. Vivion personally. Without clear proof such an

inference would hardly be reasonable.   See Towers v. Stevens, Cattle Co. (83 Minn.) 86 N. W. 88.

It is urged that as Exhibit 1, supra, specifically refers to no other writing, and no other writing in the record directly refers to it, therefore, it cannot be aided by any other writing.   But where the writings are signed by the party to be charged, as already pointed out above, a different rule prevails.   In this case upon inspection and comparison of the receipt and the other signed and connected writings offered in evidence, although no specific reference is made in either to the other, we find with reasonable certainty that they do relate to the same transaction and contain fully the terms of the agreement involved here.   The coincidences of names, dates, references to subject matter, period affected by the contract, are quite sufficient.   When these coincidences are considered in the light of the attendant circumstances proved on the trial, we arrive at a degree of certainty far beyond that which is required in determining civil issues.   The defendant, on cross-examination, in response to a question as to whether he considered his treatment of Mr. Vivion fair, answered, without objection, "I treated him shamefully."   "Q. You did?"   "A. Yes."

The statute of frauds was enacted to prevent fraud, not to aid it, and should receive a reasonable interpretation with that end in view.   The great majority of courts have always endeavored to keep that principle uppermost in rendering their decisions.

The trial court, having correctly, as we think, reached the conclusion that the signed memoranda established the pleaded agreement between the parties as valid and enforceable, the only questions left to be submitted to the jury were those relative to the breach of the contract and the matter of damages.   The authenticity of the memoranda was unquestioned.   These matters were left to the jury by Instructions Nos. 3 and 4.   The first of these instructions told the jury in substance that the alleged contract

had been proven, and nothing remained for them to do except to determine whether it had been broken and the amount of the damage thereunder. The other instruction gave the rule of law governing the measure of damages to be applied. In our judgment both instructions were proper and correctly advised the jury of the matters for their decision and the law governing them. The result shows that they were not misunderstood.

We find no reversible error in the record and the judgment should be and is affirmed.

*Affirmed.*

BLUME, J., and BROWN, District Judge, concur.