Aronoel H. TRAUTWEIN and Verne R. Woods, Appellants (Plaintiffs below),

v.

Thomas E. LEAVEY and Dorothy E. Leavey, d/b/a Wyoming Hereford Ranch, Appellees (Defendants below).

No. 3828.

Supreme Court of Wyoming.

July 23, 1970.

Byron Hirst, of Hirst & Applegate, Cheyenne, for appellants.

A. Joseph Williams, of Guy, Williams, White & Mulvaney, Cheyenne, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is an action for damages for breach of what is claimed by appellants to have been an "oral" contract. Suit was initiated by Aronoel H. Trautwein and Verne R. Woods against Thomas E. Leavey and Dorothy E. Leavey.

Plaintiffs claim they entered into an oral contract with defendants for the purchase by plaintiffs from defendants of the Hereford Ranch in Laramie County, Wyoming. Defendants denied the making of a contract and set up as a further defense that such contract, if made, is void under the statute of frauds. The trial court entered summary judgment for defendants and plaintiffs have appealed.

Although no trial was had, the record in this case is very voluminous. It contains lengthy pleadings, exhibits, depositions, affidavits, interrogatories, requests for admissions and admissions. After defendants made their motion for summary judgment, the plaintiffs filed a resistance and exhaustive briefs on behalf of both sides were presented to the trial court.

In the trial judge's memorandum of his decision, he recited that the court had digested the comprehensive, voluminous material submitted on the motion for summary judgment; and that parties had assured the court all facts including documents had been disclosed and are in the record. Again, in the judgment itself, it is recited that the court was advised by attorneys for the respective parties that no further or different evidence would be presented in the event of trial than that contained in the affidavits and depositions.

The trial court found specifically in its order for summary judgment that there is no genuine issue of fact to be submitted to the trial court. It concluded defendants were entitled to judgment as a matter of law and therefore granted defendants' motion for summary judgment.

In Hoston v. J. R. Watkins Company, 9 Cir., 300 F.2d 869, 872 (1962), the court said, where plaintiff was unable to extract from representatives of defendant any testimony supporting his claim that there was an oral contract, and where plaintiff failed by affidavit or otherwise to supply any testimony of his own as to the making or terms of such oral contract, plaintiff failed to present to the trial court any triable issue of fact. Under these circumstances, the appellate court said, the motion for summary judgment was properly granted.

Appellants agree the trial court, in the case before us, was called upon to decide these questions:

1. Was an oral contract made?

2. If so, were the several written instruments a sufficient memorandum of the oral contract to satisfy the statute of frauds?

Regarding the second question, the trial court considered three possible instruments listed by plaintiffs to see if they could constitute a sufficient signed memorial to satisfy the statute of frauds:

1. A letter from Leavey to Ed Murray & Sons Realty Company which fixed a commission for a sale of the ranch, when completed.

2. A real estate listing with Hebbard and Webb, a real estate firm in Phoenix, Arizona.

3. A telephoned telegram dated December 8, 1967 to Woods and Trautwein rejecting their offers.

Of these the trial court said, the listing with Hebbard and Webb was immaterial, except to establish that the ranch was for sale. It bears no reference to any negotiations or dealings between the parties involved in this litigation. The telegram, the court said, is completely negative to the existence of any contract. It neither admits, affirms nor in anywise even hints that a contract of sale had been made. The letter to the Murray firm, according

to the trial court, constituted nothing but an understanding as to what its commission would be if an agreement was reached with Trautwein and Woods and the sale finally consummated. Taking together all writings involved, the court concluded, they make out only a hopeless jumble and no sort of enforceable agreement.

It was recognized by the judge of the district court that the statute of frauds should not be used to perpetrate a fraud. It found no evidence of fraudulent conduct on the part of defendants, however, and commented, it is a common incident in the world of business to go to the brink in negotiations and yet not reach agreement.

■ Inasmuch as summary judgment was entered in this case, we should view the case from a standpoint most favorable to the appellants. Facts asserted by them and supported by affidavits or other evidentiary material must be taken as true. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1242, p. 198, and § 1235, pp. 140–144.

However, even if we consider only the evidence favorable to plaintiffs and disregard that which is favorable to defendants, we fail to find any evidence tending to show that an oral contract was made between the negotiating parties. On the contrary, the evidence, when construed most favorably to plaintiffs, shows that no contract was arrived at.

In other words, the plaintiffs in this case, like the plaintiff in Hoston v. J. R. Watkins Company, 9 Cir., 300 F.2d 869, 872, have failed by affidavits, depositions or otherwise to supply any testimony or evidence tending to show that an oral contract was completed by the parties. In view of such failure, the granting of summary judgment was proper.

We propose to demonstrate why we say plaintiffs have failed to show the availability of any evidence which would tend to prove that an oral contract was made. Of course, in the absence of proof that an oral contract was completed, it will not be necessary to consider whether there were sufficient instruments in writing to satisfy the statute of frauds.

### The Bargaining

■ The appellees, Mr. and Mrs. Leavey, residents of California, owned the Hereford Ranch in Wyoming. Edward F. Murray, Jr., of the real estate firm of Ed Murray & Sons Realty Company, learned the ranch was for sale. Although Murray had no listing on the ranch, he obtained several offers of purchase and submitted them to the Leaveys. All offers made prior to one submitted by plaintiff Woods were rejected.

The written offer of purchase made by Woods was taken by Murray to the Leaveys in Los Angeles. There was a question about Woods' financial ability, and Murray suggested Mr. Leavey make a telephone call to plaintiff Trautwein, a banker in Cheyenne, Wyoming. Before doing so, Leavey informed Murray a provision in the Woods offer requiring a guarantee of 2522 head of cattle could not stand because Leavey did not know how many cattle were on the ranch; also, contrary to the Woods offer, Leavey insisted to Murray there would have to be a provision permitting Leavey to sell cattle between the time of a contract and delivery of possession of the ranch.

Thereupon, Leavey and Trautwein had a telephone conversation, which all parties agree was short. The most plaintiffs claim from this conversation was that Trautwein agreed to come into the deal as an equal buyer with Woods; that Leavey said he could not guarantee the cattle count; that it was agreed Leavey could sell up to $20,000 worth of cattle to obtain money to run the ranch; that Leavey said there were other things to be settled; that Trautwein said Murray would work out everything with Leavey; and that the price discussed was $2,300,000.

Let us point out some of the reasons for considering that a completed contract or meeting of the minds had not been arrived at when the telephone conversation ended. In the first place, Trautwein said Murray

would work out everything with Leavey. In that regard, appellants say in their brief some of the details were negotiated by Murray and Leavey "after the telephone call."

Moreover, at the time of the telephone conversation the Leaveys had not yet agreed with Murray on the commission to be paid for selling the ranch. This would appear to be a substantial consideration for sellers. All parties agree the agreement between Leavey and Murray on the amount of commission to be paid, if the sale was completed, came after the telephone conversation between Trautwein and Leavey.

In any event, any doubt as to whether a final contract was arrived at when Trautwein and Leavey talked on the telephone is removed when we consider that Woods was not in on the conversation. He had not yet agreed to Trautwein coming into the deal as an equal purchaser; nor to any change in the terms of his written offer.

Negotiation proceedings which took place after the talk between Trautwein and Leavey further verify that parties did not consider a contract yet arrived at. Leavey's accountant prepared a 16 paragraph handwritten memorandum containing terms and language which should be in a new written offer—this one to be made by Trautwein and Woods and not by Woods alone. After Leavey approved the memorandum, his attorney had an instrument typed. It was entitled OFFER TO PURCHASE AGREEMENT and substantially duplicated what was in the memorandum.

The typed instrument was not signed by the Leaveys as owners. It was contemplated, and this is not disputed, that the typed instrument would be signed by Trautwein and Woods as an offer, after which it would be returned to the Leaveys for their acceptance. One of the terms was that if the offer was not accepted by midnight, December 4, 1967, it would become null and void.

It is not claimed that Leavey expressly promised in so many words, either in writing or orally, that owners would accept the offer of Trautwein and Woods if made in accordance with the terms set forth in the newly typed instrument. However, for purposes of our decision, we will assume his promise to that effect can be implied from his actions and from words he did speak.

Disregarding for the time being the effect of the statute of frauds, we can consider Leavey made an oral *offer* of sale. But before any oral offer on the part of Leavey could ripen into a contract, it would have to be accepted without alteration of the terms of the offer.

### The Law

As stated in 17 C.J.S. Contracts § 51, p. 713, if an offer is rejected, either by an absolute refusal or by an acceptance conditionally or not identical with the terms of the offer, or by a counter proposal, the party making the original offer is relieved from liability on that offer; and the party who has rejected the offer cannot afterward, at his own option, convert the same offer into an agreement by a subsequent acceptance.

This fundamental principle and rule with respect to contracts is not new. It has been adhered to in numerous cases. For example, in the following: Iselin v. United States, 271 U.S. 136, 46 S.Ct. 458, 459, 70 L.Ed. 872; McClure Insurance Agency v. Hudson, 238 Ark. 5, 377 S.W.2d 814, 815–816; Legal Security Life Insurance Company v. Ward, Tex.Civ.App., 373 S.W.2d 693, 698.

Corbin explains the rule in this language:

"The power of acceptance created by an ordinary offer is terminated by a communicated rejection. This is true even though a definite time was given by the offeror for considering his offer and the rejection is before that time has expired. When the offeror receives a notice of rejection, he is very likely to change his position in reliance thereon; one aspect of this is that he will not think it neces-

sary to send a notice of revocation, in those cases in which he has power to revoke. This has led to the rule that a definite rejection terminates the offeree's power to accept." 1 Corbin, Contracts, § 94, p. 389 (1963).

The rule we have referred to is clearly applicable to the facts in this case. When Murray returned from Los Angeles he took the instrument which had been there prepared to Trautwein and Woods. They signed the instrument but attached to it a document entitled AMENDMENT TO OFFER TO PURCHASE AGREEMENT. The amendment provided: "The attached Offer to Purchase Agreement is hereby signed subject to the following three amendments" and the amendments were set forth.

There can be no doubt that the proposed amendments were fundamental and materially changed the purchase terms. We do not deem it necessary, however, to go into the content and effect of the proposed amendments. Suffice it to say appellants are not standing on any claim that the amendments were immaterial.

Murray returned to Los Angeles December 6, 1967 and presented the offer, with the attached amendments, to Leavey. There is no denial that Leavey immediately told Murray he would not accept the amendments because they changed the whole deal. Murray then got in touch with Trautwein, and on December 7, 1967 Trautwein's bank sent a telegram to Leavey advising him the "amendment" was removed and the original offer was acceptable in all respects.

Leavey replied by telegram dated December 8, 1967 advising Trautwein and Woods their offer was not accepted or approved and there was no contract or agreement to purchase between the parties; also that any and all offers including the attempted removal of any amendment or amendments were rejected.

It is abundantly clear from the authorities cited that the counter proposal made by Trautwein and Woods, when they attached three amendments, terminated their power of acceptance of any previous offer made by Leavey and relieved Leavey from liability on any previous offer. In the absence of a renewal of offer from Leavey, no contract was completed. According to Corbin, this would be true even if the time for acceptance by Trautwein and Woods had not yet expired.

### Concerning Time

The instrument which was prepared in Los Angeles, with the thought that it would be signed by Trautwein and Woods as an offer to purchase, contained this provision: "If this offer is not accepted by the seller on or before midnight, December 4, 1967, it shall become null and void * * *."

Of course, if it is to be assumed that Leavey made an oral offer, it must be said the offer was limited to those terms set forth in the prepared instrument. Leavey did not agree, expressly or impliedly, to be bound indefinitely. It was clearly contemplated Trautwein and Woods (if they accepted what Leavey was proposing) would sign in sufficient time for Leavey and his wife to sign on or before December 4, 1967.

In the record there is a penciled notation opposite the date of December 4, 1967 which reads "Extended orally to 6." It is not clear who is supposed to have extended the time, but it is immaterial. No attempt was made on behalf of the buyers to remove their qualified acceptance of Leavey's proposal until after December 6, or on December 7.

If it could be said acceptance on the part of buyers would be good a day or two after the deadline of December 6, the same logic would dictate that acceptance a year or two after December 6 would be equally good. That, however, was clearly not the intention of the parties. Leavy did not promise or imply any promise to bind himself after December 6, 1967 on any oral offer of sale.

Having shown why no oral contract was made between the negotiating parties, we find it necessary to uphold the judgment of the district court. We therefore need not discuss the effect of the statute of frauds.

Affirmed.

PARKER, Justice (dissenting).

I am unable to follow the reasoning of the prevailing opinion, which in effect holds that there was no issue of material fact concerning an oral agreement. It is my view that there was substantial evidence from which it could have been found there was a definite though not detailed oral contract established by the telephone conversation between defendant Leavey and plaintiff Trautwein on November 29, 1967, by which the entire ranch and personal property, including livestock, was to be sold for $2,300,000 with Leavey having the privilege of selling livestock not to exceed $20,000 before actual transfer on December 15, 1967, such amount not to be deducted from the purchase price. This constituted an issuable fact and was a matter for the jury, which the defendants had demanded, and not one for summary judgment. Even so, the nonexistence of an oral contract was only one of two bases mentioned by the trial court as predication for its holding, which if correct on either ground must be affirmed. Hence, the second reason must be examined.

Plaintiffs do not contradict defendants' contention that the oral contract is not enforceable unless there is some note or memorandum in writing, which would take it out of the statute of frauds. This court has long adhered to the principle that in order to satisfy such requirement the "note or memorandum" must contain the terms of the contract with such certainty that its essentials can be known without resort to parol evidence.[1] Of course, the "note or memorandum" need not be contained in a single document but may be in separate writings, which when taken together meet the requirements of the statute.[2]

Plaintiffs argue that the signed documents (the exclusive listing agreement given by Leavey; the November 30, 1967, letter from Leavey to Murray concerning the commission to be paid him when the sale had been completed "and the escrow closed"; the December 8, 1967, telephone-telegram from Leavey to Trautwein and Woods, rejecting any and all offers) together with a handwritten but unsigned paper, designated by plaintiffs as the "escrow," stated with particularity the terms of the sale. They maintain that the parties disagree as to whether the handwritten "escrow" was a "written memorandum of a completed oral contract" and that the conflict about what the parties intended was a question of material fact for the jury. They further insist that since this was properly a matter for the jury's determination the trial court erred in not even considering the "escrow" in arriving at its decision, a criticism scarcely borne out by the record.

It is apparently true that the trial court did not view the "escrow" as a "note or memorandum" which might properly be considered, having stated in its May 22, 1969, letter to counsel:

"Taking together all writings here involved—the Offer to Purchase Agreement, the Amendment to Offer to Purchase Agreement, the telegrams, the letter to Murray—make out only a hopeless jumble, not any sort of enforceable agreement."

However, the court was aware of and weighed the "escrow," speaking of it in the letter as a longhand draft of a proposed agreement which was later typed, appeared to satisfy Leavey, and was entitled "Offer to Purchase Agreement." Thus, the error, if any, was not in failing to consider the

1. Wallis v. Bosler, 70 Wyo. 129, 246 P.2d 771, 778; Mead v. Leo Sheep Co., 32 Wyo. 313, 232 P. 511, 514; Burley-Winter Pottery Co. v. Onken Bros. & West Co., 26 Wyo. 287, 183 P. 747, 749.

2. Noland v. Haywood, 46 Wyo. 101, 23 P.2d 845, 848.

"escrow" but rather in tacitly rejecting it as a writing within the meaning of § 16–1, W.S.1957, C. 1965.

Plaintiffs argue that a memorandum of an oral agreement sufficient to satisfy the statute of frauds may consist of several documents, not all of which need be signed by the party charged, if the signed writings refer to the unsigned writings, and if it appears from examination of all of the signed writings that they were signed with reference to the transactions in issue, and insist that the word "escrow" in the signed letter from Leavey to Murray "could not possibly have referred to anything other than the handwritten instrument which is almost entirely devoted to the terms of the 'escrow' and in which the word 'escrow' is used more than twenty times." Defendants' principal response to this thesis is reference to a quotation in Mead v. Leo Sheep Co., 32 Wyo. 313, 232 P. 511, 514, of an earlier pronouncement in Burley-Winter Pottery Co. v. Onken Bros. & West Co., 26 Wyo. 287, 183 P. 747, 749, quoting 20 Cyc. 258, that:

> " 'In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or *by reference contained in it to some other writing*, without recourse to parol proof to support them.' " (Emphasis supplied.)

and a quotation in the Mead case from Thayer v. Luce, 22 Ohio St. 62:

> " 'If one only of such papers be signed by the party to be charged in the action, the rule seems to be that special reference must be made therein to those papers that are not so signed; but if the several papers relied on be signed by such party, it is sufficient if their connection and relation to the same transaction can be ascertained and determined by inspection and comparison.' "

Defendants' counsel thus contents himself and purports to dismiss the point by merely voicing an opinion that "the November 30 letter does not refer to the other documents, and hence the other documents, all unsigned, do not satisfy the statute." Such unsupported statement, like that of the trial court in its letter to counsel, is unconvincing and insufficient to remove questions of fact. It is true that the use of the word "escrow" in the Leavey letter to Murray cannot categorically be denominated a "special reference" to the longhand writing by Adams, approved by Leavey, and later incorporated in the typed instrument entitled "Offer to Purchase Agreement." Also the situation is somewhat complicated by Murray's statement in his deposition that the escrow mentioned in the typed "Offer to Purchase Agreement" was the escrow referred to in Leavey's letter to him. Nevertheless, the entire situation in this aspect of the case as disclosed by the pleadings, affidavits, and depositions, points up a genuine issue of material fact so that resolution of the controversy was one for the jury and therefore the entry of summary judgment was improper.